IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

RICHARD HUNTER                                                                    PLAINTIFF

v.                              CIVIL NO. 19-3085

ANDREW M. SAUL, Commissioner
Social Security Administration                                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Richard Hunter, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background**:

Plaintiff protectively filed his current applications for DIB and SSI on April 12, 2017, alleging an inability to work since February 7, 2017,[1] due to paranoid schizophrenia, bipolar disorder, depression, a back injury, carpal tunnel, arthritis, post-traumatic stress disorder (PTSD),

---

[1] The Court notes two previous administrative hearing decisions denying Plaintiff's applications for disability were issued on September 17, 2013, and February 9, 2017, respectively. (Tr. 67, 88).

1

and Hepatitis C. (Tr. 112, 246, 253). For DIB purposes, Plaintiff maintained insured status through March 31, 2019. (Tr. 11). An administrative hearing was held on October 3, 2018, at which Plaintiff appeared with counsel and testified. (Tr. 27-66).

By written decision dated July 3, 2019, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 13). Specifically, the ALJ found Plaintiff had the following severe impairments: cervical spondylosis, stenosis of the thoracic spine, degenerative disc disease of the lumbar spine, carpal tunnel syndrome, bipolar disorder, and a depressive disorder. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to frequent bilateral handling and fingering is able to perform work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote with few variables and little judgment; and supervision required is simple, direct and concrete.

(Tr. 14). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a fast food worker, a merchandise marker, and a plastics molding machine tender. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 24, 2019. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 2). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 13, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.     Evidence Presented:

At the administrative hearing held before the ALJ on October 3, 2018, Plaintiff, who was fifty years of age, testified he graduated from high school on a work program. (Tr. 33). In paperwork completed for his application for disability, Plaintiff indicated he graduated from high school. (Tr. 278) The record reflects Plaintiff's past relevant work consists of work as a groundskeeper, a custodian, an apartment maintenance worker, and a produce clerk II. (Tr. 60).

Prior to the relevant time period, Plaintiff sought treatment for various impairments including but not limited to back pain, carpal tunnel syndrome, depression, bipolar disorder, and arthritis.

The pertinent medical evidence for the time period in question reflects the following. In a letter dated February 6, 2017, Dr. James Hawk informed Plaintiff that he did not pass his last urine drug screen. (Tr. 379). Dr. Hawk noted that only prescribed medication should be in Plaintiff's system. Dr. Hawk stated this would be Plaintiff's only warning, and that should Plaintiff fail another urine drug screen he would be dismissed from the clinic.

On February 24, 2017, Plaintiff was seen by Dr. Hawk for a medication refill. (Tr. 349-351). Plaintiff reported he smoked thirty or more cigarettes a day. Plaintiff complained of mild to moderate cramping in his legs. Dr. Hawk noted the pain was fairly well controlled on the current medication. Dr. Hawk noted Plaintiff was given a written warning regarding the detection of meprobamate in his urine drug screen from December. Upon examination, Dr. Hawk noted Plaintiff's general health was normal. Dr. Hawk observed no spinal or paraspinal tenderness. Dr. Hawk noted Plaintiff would undergo a urine drug screen. Plaintiff's medication was refilled.

In a letter dated March 6, 2017, Dr. Hawk informed Plaintiff that he would no longer treat him as Plaintiff had violated his contract with the office. (Tr. 378).

On May 19, 2017, Plaintiff complained of back pain, leg pain and neck pain. (Tr. 393-395). Upon examination, Dr. William Gordon Coults Jr., noted Plaintiff was well developed and groomed and in no acute distress. Plaintiff was noted to have normal muscle strength and tone without atrophy or abnormal movement. Plaintiff was oriented to person, place, and time. Plaintiff had intact recent and remote memory with normal attention span and concentration. Plaintiff demonstrated accuracy with naming objects, repeating phrases and spontaneous speech. Plaintiff exhibited tenderness to palpation of the cervical, thoracic, and lumbar spine. Dr. Coults assessed Plaintiff with back pain, leg pain and neck pain. Plaintiff was counseled on physical activity and nutrition.

On July 3, 2017, Plaintiff complained of back pain, leg pain and neck pain. (Tr. 455-458). Upon examination, Dr. Robert John Tomlinson Jr., noted Plaintiff was well developed and groomed and in no acute distress. Plaintiff was noted to have normal muscle strength and tone without atrophy or abnormal movement. Plaintiff was oriented to person, place, and time. Plaintiff had intact recent and remote memory with normal attention span and concentration. Plaintiff demonstrated accuracy with naming objects, repeating phrases and spontaneous speech. Plaintiff exhibited tenderness to palpation of the cervical, thoracic, and lumbar spine. Plaintiff was counseled on physical activity and nutrition. Plaintiff's amitriptyline was discontinued due to interactions with Prozac.

On August 21, 2017, Dr. Bill F. Payne, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds; could stand and/or walk for a total of six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative and environmental limitations were not evident. (Tr. 118-119). On December 11, 2017, after reviewing the records, Dr. Dan Gardner affirmed Dr. Payne's opinion. (Tr. 145-146).

On August 22, 2017, Dr. Christal Janssen, a non-examining medical consultant, opined Plaintiff's mental impairments were non-severe. (Tr. 116-117). In doing do, Dr. Janssen noted that there was insufficient evidence in the file due to Plaintiff's failure to cooperate.

On August 23, 2017, Plaintiff complained of low back pain, neck pain, schizophrenia, bipolar disorder, anxiety, and hypertension. (Tr. 517-519). Upon examination, Dr. Tomlinson noted Plaintiff was well developed and groomed and in no acute distress. Plaintiff was noted to have normal muscle strength and tone without atrophy or abnormal movement. Plaintiff was oriented to person, place, and time. Plaintiff had intact recent and remote memory with normal attention span and concentration. Plaintiff demonstrated accuracy with naming objects, repeating phrases and spontaneous speech. Plaintiff exhibited tenderness to palpation of the cervical, thoracic, and lumbar spine. It was recommended that Plaintiff make an appointment for psych meds. Plaintiff reported he had been treated by Dr. Hudefi, at Woodland Research Center, and that he was out of medication. Dr. Tomlinson indicated he called Dr. Hudefi's office and was told Plaintiff had not been seen since 2015. Plaintiff was counseled on physical activity and nutrition.

5

On September 22, 2017, Plaintiff complained of low back pain, neck pain, schizophrenia, bipolar disorder, anxiety, and hypertension. (Tr. 514-516). Upon examination, Dr. Tomlinson noted Plaintiff was well developed and groomed and in no acute distress. Plaintiff was noted to have normal muscle strength and tone without atrophy or abnormal movement. Plaintiff was oriented to person, place, and time. Plaintiff had intact recent and remote memory with normal attention span and concentration. Plaintiff demonstrated accuracy with naming objects, repeating phrases and spontaneous speech. Plaintiff exhibited tenderness to palpation of the cervical, thoracic, and lumbar spine. Plaintiff was able to toe and heel walk without difficulty. Plaintiff was counseled on physical activity and nutrition. Dr. Tomlinson ordered physical therapy for one visit for home therapy.

On November 20, 2017, Plaintiff underwent a MRI of the lumbar spine that revealed mild degenerative changes involving the lumbar spine with a chronic appearing, 1.3 cm broad-based right foraminal disc protrusion involving the T12/L1 level; and moderate central canal and right neural foraminal stenosis involving the T12/L1 level. (Tr. 533-534).

On December 20, 2017, Plaintiff underwent a mental diagnostic evaluation performed by Richard D. Back, Ph.D. (Tr. 539-544). Dr. Back noted Plaintiff was neatly attired with appropriate hygiene but was confused as to the reason he was undergoing the evaluation. Plaintiff reported he tried to work when he could, but then reported he worried about a lot of things. Plaintiff was worried he was in trouble during the session. Plaintiff indicated he was out of his medication. Dr. Back noted Plaintiff was accompanied by a friend who reported Plaintiff was anxious and often thought people were looking for him. Dr. Back noted most of the information during the session came from this friend. Plaintiff's friend reported she would try to cook for Plaintiff and to do his

laundry. Plaintiff reported he liked to mow the yard and to fix things. Dr. Back noted Plaintiff had a markedly agitated tone and displayed confusion and fear. Dr. Back noted Plaintiff mumbled. Plaintiff was noted as disoriented as to date, time, and place, and was unable to answer general information questions. Dr. Back opined that Plaintiff's functioning was within the mentally retarded range. Dr. Back further opined Plaintiff's symptoms suggested schizophrenia. With respect to adaptive functioning, Dr. Back opined Plaintiff's impairments severely impacted his day-to-day functioning, his ability to communicate and interact, his ability to cope with the mental demands of basic work-like tasks, his ability to attend and sustain concentration, his ability to sustain persistence in completing tasks, and his ability to complete tasks within an acceptable timeframe. Dr. Back noted Plaintiff was not adequately cooperative but gave no indication of symptom exaggeration. Dr. Back noted Plaintiff "gave approximate answers or atypical symptoms which [was] typical for schizophrenia."

On December 28, 2017, Dr. Laurie Clemons, a non-examining medical consultant, opined Plaintiff's mental impairments were non-severe. (Tr. 142-144). Dr. Clemons indicated Dr. Back's evaluation had been reviewed. Dr. Clemons noted that through September of 2017, Plaintiff's cognitive exams showed concentration, memory, language, and fund of knowledge to be wholly intact with no indication of confusion or inability to care for himself. Dr. Clemons noted there was insufficient evidence due to Plaintiff's failure to cooperate.

On July 17, 2018, Plaintiff was seen at Andrews Center in Tyler, Texas, for an assessment performed by Brandi Sawyer, LPC. (Tr. 556-571). Ms. Sawyer noted Plaintiff's report that he had a terrible childhood and had a history of bipolar disorder. Plaintiff indicated he had a doctor in Arkansas. Ms. Sawyer noted Plaintiff presented with rapid speech, high emotionality, and mood

7

lability. Plaintiff indicated he was homeless, and had a history of heavy alcohol use prior to couple of months ago. Plaintiff reported he had written hot checks in Arkansas and was scared of the police. Upon evaluation, Ms. Sawyer noted Plaintiff was well groomed with a neat/clean appearance. Plaintiff communicated normally and had a primarily appropriate affect. Plaintiff exhibited a labile mood and had paranoid thoughts/perceptions. Plaintiff had fair insight, good memory, and intact reality orientation. Plaintiff reported he had a really hard time working with other people and needed to work by himself. Plaintiff reported he had a couple of beers and smoked marijuana several days ago and had used meth a few weeks ago. Ms. Sawyer suspected Plaintiff may manipulate others for self-gain. Plaintiff was assessed with Bipolar II disorder, PTSD, alcohol use disorder, amphetamine-type disorder, and cannabis use disorder. Ms. Sawyer noted that the validity of the assessment was questionable because symptoms could possibly be drug induced. A recovery plan was established on July 25, 2018. (Tr. 552-555).

On September 19, 2018, Plaintiff was seen by Dr. Richard D. Tyer for neck pain. (Tr. 572-573). Dr. Tyer noted Plaintiff had recently moved to Tyler, Texas, from Arkansas. Dr. Tyer noted Plaintiff had been on chronic pain medications including hydrocodone, as well as Prozac for bipolar disorder and PTSD. Plaintiff reported a few weeks ago a car hood had fallen on his head and since that time he had trouble with turning his neck. Plaintiff reported he had worn a neck brace at night for the past few nights which had helped with the pain. Dr. Tyer noted a CT scan of the neck revealed multifocal spondylosis and central disc protrusion at C4-C5. After examining Plaintiff, Dr. Tyer opined Plaintiff would benefit from a muscle relaxant. Plaintiff was to return for a follow-up if needed.

### III. Applicable Law:

The Court reviews "the ALJ's decision to deny disability insurance benefits de novo on the record to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." Combs v. Berryhill, 878 F.3d 642, 645-46 (8th Cir. 2017). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." Id. The Court considers "the record as a whole, reviewing both the evidence that supports the ALJ's decision and the evidence that detracts from it." Id. The Court will not reverse an administrative decision simply because some evidence may support the opposite conclusion. Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. Id.

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

**IV.   Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ failed to resolve a direct conflict between the RFC assessment, the Dictionary of Occupational Titles, and the vocational expert testimony; and 2) the ALJ's decision must be remanded because the ALJ's evaluation of Plaintiff's subjective complaints and the opinion evidence was completely deficient and failed to comply with the standards set forth by multiple rules and regulations.

    **A.   Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on March 31, 2019. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of February 7, 2017, his alleged onset date of disability, through March 31, 2019, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB, he must prove that on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).

With respect to Plaintiff's SSI application, benefits are not payable prior to the date of application, regardless of how far back disability may, in fact, be alleged or found to extend. See 20 C.F.R. § 416.335. Therefore, the relevant period is from April 12, 2017, the date Plaintiff protectively applied for SSI benefits, through July 3, 2019, the date of the ALJ's decision.

### B.    Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The record revealed Plaintiff failed to complete and submit the Function Report when he applied for disability. The ALJ addressed Plaintiff's activities of daily living and how Plaintiff reported a friend helped him

with cooking, cleaning, and laundry. (Tr. 17). The ALJ also noted Plaintiff's kids were able to come to his house and visit. The record also revealed Plaintiff was able to move to Texas and back to Arkansas during the time period in question. Substantial evidence supports the ALJ's determination that Plaintiff's activities of daily living were not as limited as alleged by Plaintiff.

With respect to Plaintiff's alleged impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication during the time period in question. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain).

The Court would also note that while Plaintiff indicated an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The record further revealed that Plaintiff was able to come up with the funds to support his smoking habit during the relevant time period.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

C. **The ALJ's RFC Determination and Medical Opinions:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform light work with limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert,

13

whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff argues that the ALJ improperly discounted the December 20, 2018, opinion of Dr. Back who opined Plaintiff's mental impairments severely limited his ability to perform day-to-day functioning, communicate, cope with the demands of basic work-like tasks, to attend and sustain concentration, to persist, or to complete work in an acceptable timeframe. The evidence of record revealed that after reviewing Plaintiff's record, to include the evaluation of Dr. Back, Dr. Clemons noted that through September of 2017, Plaintiff's cognitive exams showed concentration, memory, language, and fund of knowledge to be wholly intact with no indication of confusion or inability to care for himself. It is noteworthy that in July of 2018, the Ms. Sawyer noted Plaintiff communicated normally, had fair insight, exhibited a good memory, and had intact reality orientation. Ms. Sawyer further opined Plaintiff may manipulate others for self-gain. After review, the Court finds that the ALJ did not err in discounting the opinion of Dr. Back. The ALJ declined to give controlling weight to Dr. Back's opinion for good and well-supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

    **D.**    **Hypothetical Question to the Vocational Expert:**

Plaintiff argues that one of the jobs the vocational expert found Plaintiff was able to perform was contradictory to Plaintiff's assigned RFC. Specifically, Plaintiff argues that the job as a fast food worker required constant reaching and handling, and dealing with people beyond giving instructions.

The ALJ found Plaintiff able to perform work as a fast food worker, a merchandise marker, and a plastics molding machine tender. The Dictionary of Occupational Titles number assigned to the above mentioned jobs are 311.472-010, 209.587-034, and 556.685-082, respectively. See DICOT §§ 311.472-010, 209.587-034, 556.685-082 at www.westlaw.com. While the job as a fast food worker requires constant reaching and handling, and dealing with people, and does not fall within the specified RFC in this case, as pointed out by Defendant, the vocational expert testified that Plaintiff would be able to perform other jobs as a merchandise marker and a plastics molding machine tender, both of which require at most frequent handling, reaching and fingering. Id at §§ 311.472-010, 209.587-034, 556.685-082. Dealing with people is also not a significant part of the job for a merchandise marker or plastics molding machine tender. Id.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a merchandise marker or a plastics molding machine tender. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

V.      **Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our**

**report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of September 2020.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE